UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Stephanie Clifford a.k.a. Stormy Daniels, | Civil Action No. |
| Plaintiff, | |
| - against – | |
| Donald J. Trump, | |
| Defendant. | APRIL 30, 2018 |

## COMPLAINT FOR DEFAMATION AND JURY DEMAND

Plaintiff Stephanie Clifford a.k.a. Stormy Daniels ("Ms. Clifford" or "Plaintiff"), by and through her attorneys, for her complaint alleges as follows:

## THE PARTIES

1. Plaintiff Ms. Clifford, an individual, is a resident of the State of Texas.

2. Defendant Donald J. Trump ("Mr. Trump" or "Defendant"), an individual, is a resident of the State of New York.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over Plaintiff's claims based on the parties' diversity of citizenship and because the amount in controversy exceeds $75,000.

4. Venue is appropriate in this judicial district, pursuant to 28 U.S.C. § 1391, because this Court has personal jurisdiction over Defendant and by reason of the fact that, among other things, this is a judicial district in which the Defendant resides.

## **FACTUAL BACKGROUND**

5. Ms. Clifford began an intimate relationship with Mr. Trump in the summer of 2006 in Lake Tahoe.

6. In May 2011, Ms. Clifford agreed to cooperate with *In Touch Magazine* in connection with an article about her relationship with Mr. Trump that the magazine was preparing at the urging of Ms. Clifford's ex-husband, who approached the magazine without approval from Ms. Clifford. She did so only after being told that the magazine was going to be running the story with or without her cooperation.

7. A few weeks later, in Las Vegas, Nevada, Ms. Clifford was approached and threatened by a man regarding her intention to tell the story of her relationship with Mr. Trump. The threat occurred in the presence of Ms. Clifford's infant daughter, in a parking lot.

8. The man approached Ms. Clifford in the parking lot and said to her, "Leave Trump alone. Forget the story."

9. The man then leaned around and looked at Ms. Clifford's infant daughter and said, "That's a beautiful little girl. It'd be a shame if something happened to her mom." The man then left.

10. Ms. Clifford was shaken by the experience and understood the man's statement to be a direct threat.

11. Because Ms. Clifford was frightened, however, she did not go to the police and did not seek to go public with her story at that time. She likewise did not go to the police at that time because she was concerned about her relationship at the time and the impact that disclosure of the threat might have on her relationship.

12.     The story was never run by *In Touch* because, on information and belief, after the magazine called Mr. Trump seeking comment, his attorney Michael Cohen threatened and intimated the magazine into not proceeding with the story.

13.     Mr. Trump was elected President of the United States on November 8, 2016.

14.     Thereafter, on or about April 17, 2018 and on behalf of Ms. Clifford, a sketch of the man who threatened her in 2011 was released publicly. The sketch was created in consultation with Ms. Lois Gibson, one of the foremost forensic artists in the world. Ms. Gibson met with Ms. Clifford for an extended period of time while compiling the sketch and asked her numerous questions about the encounter and the assailant.

15.     The next day, on April 18, 2018, Mr. Trump, from his verified personal Twitter account (@realDonaldTrump) posted the following false statement regarding Ms. Clifford, the sketch, and her account of the threatening incident that took place in 2011:

> A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!

16.     The statement posted by Mr. Trump was in response to another tweet posted by the account DeplorablyScottish (@ShennaFoxMusic) which showed side-by-side images of the sketch of Ms. Clifford's harasser and a picture of Ms. Clifford and her husband.

17.     Mr. Trump's statement falsely attacks the veracity of Ms. Clifford's account of the threatening incident that took place in 2011. It also operates to accuse Ms. Clifford of committing a crime under New York law, as well as the law of numerous other states, in that it effectively states that Ms. Clifford falsely accused an individual of committing a crime against her when no such crime occurred. Mr. Trump's statement is false and defamatory. In making the statement, Mr. Trump used his national and international audience of millions of people to make a false factual statement to denigrate and attack Ms. Clifford. Mr. Trump knew that his false, disparaging

3

statement would be read by people around the world, as well as widely reported, and that Ms. Clifford would be subjected to threats of violence, economic harm, and reputational damage as a result.

18. At the time Mr. Trump made the statement, Mr. Trump knew his statement was false or was made with reckless disregard for the truth or falsity of his statement.

19. Mr. Trump's false statement about Ms. Clifford is defamation *per se* because, among other things, it charged Ms. Clifford with committing a serious crime.

20. Ms. Clifford has suffered damage as a result of Mr. Trump's false and defamatory statement in an amount to be proven at trial but in excess of $75,000.

## CAUSE OF ACTION FOR DEFAMATION

21. Plaintiff restates and re-alleges each and every allegation in Paragraphs 1 through 20 above as if fully set forth herein.

22. On or about April 18, 2018, Mr. Trump made the above mentioned false statement regarding Ms. Clifford, her account of the 2011 threatening incident, and the sketch of the man who threatened her: "A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!"

23. Mr. Trump's statement was made in writing online and released by Mr. Trump with the intent that it be widely disseminated and repeated. Indeed, Mr. Trump knows that his personal Twitter account has an audience of over 50 million followers and that the Twitter post would be repeated and reported upon by other news and media outlets online, in print, and on television and radio.

24. Mr. Trump's defamatory statements clearly identified Ms. Clifford and the statement was made in response to Ms. Clifford releasing the sketch. It was apparent on its face to those who read the statement that Mr. Trump's defamatory statement was about Ms. Clifford.

25. Mr. Trump's statement was defamatory *per se*.

26. The plain import of the statement is an attack on the truthfulness of Ms. Clifford and is reasonably understood to state that Ms. Clifford is lying about the threatening encounter and the sketch of the man responsible.

27. Moreover, by calling the incident a "con job" Mr. Trump's statement would be understood to state that Ms. Clifford was fabricating the crime and the existence of the assailant, both of which are prohibited under New York law, as well as the law of numerous other states

28. Thus, both on its face, and because of the facts and circumstances known to persons who read or heard the statement, it was apparent that Mr. Trump meant to convey that Ms. Clifford is a liar, someone who should not be trusted, that her claims about the threatening encounter are false, and that she was falsely accusing the individual depicted in the sketch of committing a crime, where no crime had been committed.

29. Mr. Trump's defamatory statement was false because Ms. Clifford was in fact threatened in 2011 as she has recounted and the sketch was the result of her recollection regarding the appearance of the assailant.

30. Mr. Trump made his statement either knowing it was false, had serious doubts about the truth of his statement, or made the statement with reckless disregard for its truth or falsity.

31. Given the circumstances surrounding the threatening incident in 2011, namely that Ms. Clifford had not at the time gone public with her story and very few people knew of the possible In Touch story, it is reasonable to infer that the person who threatened Ms. Clifford could

have only been acting directly or indirectly on behalf of Mr. Trump and/or Mr. Cohen. Thus, Mr. Trump may have actual knowledge of the incident and of the falsity of his statement.

32. Alternately, if Mr. Trump in fact had no direct or indirect connection to the incident, then Mr. Trump necessarily acted in reckless disregard of the truth or falsity of his statement because he would have no way of knowing one way or the other as to whether the incident occurred. Nevertheless, and in spite of this, he chose to defame and disparage Ms. Clifford to his audience of over 50 million Twitter followers and many more worldwide.

33. Mr. Trump's statement exposed Mr. Clifford to hatred, contempt, ridicule, and shame, and discouraged others from associating or dealing with her.

34. As a result, Ms. Clifford has suffered damages in an amount to be proven at trial, including but not limited to, harm to her reputation, emotional harm, exposure to contempt, ridicule, and shame, and physical threats of violence to her person and life.

35. In particular, since the statement, Ms. Clifford has been exposed to death threats and other threats of physical violence, causing her both emotional and economic damages.

36. By way of example only, Ms. Clifford has had to retain the services of professional bodyguards and other protective services to ensure her personal safety.

37. Ms. Clifford's damages exceed $75,000.

38. In making the defamatory statement identified herein, Mr. Trump acted with malice, oppression, or fraud, and is thus responsible for punitive damages in an amount to be proven at trial according to proof.

## **PRAYER FOR RELIEF**

1. Compensatory damages in an amount to be proven at trial;

2. Punitive damages;

3. Pre-judgment and post-judgment interest;

4. Costs of suit; and

5. For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all causes so triable.

Dated: April 30, 2018
Greenwich, CT

/s/ Catherine R. Keenan
Catherine R. Keenan, Esq.
Federal Bar No. CK5925
66 Field Point Road
Greenwich, CT 06830
Tel: (203) 661-4200
Fax: (203) 661-3666
E-Mail: efile@greenwichlegal.com

AVENATTI & ASSOCIATES, APC
Michael J. Avenatti (*Pro Hac Vice*
application forthcoming)
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Tel: (949) 706-7000
E-Mail: mavenati@eoalaw.com