OPPOSITION

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHANIE CLIFFORD A.k.a. STORMY DANIELS, | CASE NO. 1:18-cv-03842 |
| Plaintiff, | |
| v. | |
| DONALD J. TRUMP, | |
| Defendant. | Complaint Filed:  April 30, 2018 |

**PLAINTIFF STEPHANIE CLIFFORD'S OPPOSITION TO DEFENDANT DONALD J.
TRUMP'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) OR, IN THE
ALTERNATIVE, TO DISMISS OR STAY PURSUANT TO THE "FIRST-FILED" RULE**

Catherine R. Keenan, Esq.
Federal Bar No. CK 5925
66 Field Point Road
Greenwich, CT 06830
Tel: (203) 661-4200
Fax: (203) 661-3666
E-Mail: efile@greenwichlegal.com

*Attorneys for Plaintiff Stephanie Clifford*

# TABLE OF CONTENTS

I.  INTRODUCTION........................................................................................................1

II.  BACKGROUND ........................................................................................................2

   A.  The Conduct at Issue in this Action Postdates the Declaratory Relief Action................ 3

   B.  The Merits of this Action and the California Actions Do Not Overlap. .......................... 3

      1.  The Allegations of this Defamation Action are Limited to Whether Mr. Trump
          Defamed Plaintiff By Calling Her a Liar Regarding a Threatening Encounter
          that Took Place in 2011................................................................................................. 3

      2.  The Allegations of the Declaratory Relief Action Center on the Enforceability
          of the Settlement Agreement....................................................................................... 5

      3.  Mr. Trump Has Not Admitted to Being a Party to the Settlement Agreement or
          Sought Relief Under It. ................................................................................................ 7

      4.  The Attorney Action Was Remanded to State Court and Is Not a Basis for
          Transfer. ........................................................................................................................ 9

III.  ARGUMENT ...........................................................................................................10

   A.  Mr. Trump Does Not Establish That This Action Could Have Been Brought in
       California. ........................................................................................................................ 10

      1.  There Is No Forum Selection Clause in the Settlement Agreement......................... 11

      2.  Mr. Trump Does Not Establish That Venue Would Have Been Proper in
          California......................................................................................................................... 12

   B.  The Convenience Factors Do Not Favor Transfer. ........................................................ 14

      1.  The Interests of Justice Do Not Favor Transfer. ........................................................ 14

      2.  Plaintiff's Choice of Forum is Entitled to Deference................................................. 18

      3.  The Convenience of Witnesses Does Not Favor Transfer. ....................................... 18

      4.  The Location of Documents Does Not Favor Transfer.............................................. 22

      5.  The Locus of Operative Facts Does Not Favor Transfer. ......................................... 22

6.  The Availability of Process to Compel the Attendance of Witnesses Does Not Favor Transfer. ................................................................................................ 23

7.  The Relative Means of the Parties Does Not Favor Transfer................................... 23

8.  Balancing the Factors Does Not Favor Transfer. ..................................................... 24

C.  In the Alternative, the First-Filed Doctrine Does Not Require a Stay or Dismissal. ..... 24

**IV.   CONCLUSION ..................................................................................................................25**

# TABLE OF AUTHORITIES

## CASES

AEI Life, LLC v. Lincoln Ben. Life,
   305 F.R.D. 37 (E.D.N.Y. 2015) ............................................................. 24, 25

Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.,
   457 F. Supp. 2d 474 (S.D.N.Y. 2006)..................................................... 22, 24

Am. Steamship Owners v. Lafarge N. Am.,
   474 F. Supp. 2d 474 (S.D.N.Y. 2007).................................................... passim

Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas,
   571 U.S. 49 (2013) ................................................................................ 11, 12

Balance Point Divorce Funding, LLC v. Scrantom,
   978 F. Supp. 2d 341 (S.D.N.Y. 2013)..................................................... 10, 13

Bukhari v. Deloitte & Touche LLP,
   No. 12 CIV 4290 PAE, 2012 WL 5904815 (S.D.N.Y. Nov. 26, 2012)......................... 24

Calder v. Jones,
   465 U.S. 783 (1984).................................................................................. 13

Children's Network, LLC v. PixFusion LLC,
   722 F. Supp. 2d 404 (S.D.N.Y. 2010)..................................................... 14, 17

Eagle Auto Mall Corp. v. Chrysler Grp., LLC,
   760 F. Supp. 2d 421 (S.D.N.Y. 2011)........................................................... 18

Employers Ins. of Wausau v. Fox Entm't Grp.,
   522 F.3d 271 (2d Cir. 2008)........................................................................ 24

Erickson Beamon Ltd. v. CMG Worldwide, Inc.,
   No. 12 CIV 5105 NRB, 2013 WL 5355010 (S.D.N.Y. Sept. 25, 2013)................. 10, 14

Excelsior Designs, Inc. v. Sheres,
   291 F. Supp. 2d 181 (E.D.N.Y. 2003) ..................................................... 22, 23

Fed. Deposit Ins. v. Paragon Mortg. Servs.,
   No. 1:15 CV 2485, 2016 WL 2646740 (N.D. Ohio May 10, 2016) ................................ 12

Hershman v. UnumProvident,
   658 F. Supp. 2d 598 (S.D.N.Y. 2009).............................................. 10, 18, 19

Hicks v. Brophy,
   839 F. Supp. 948 (D. Conn. 1993) ...................................................................... 13, 19, 20

In re Cuyahoga Equip. Corp.,
   980 F.2d 110 (2d Cir. 1992).................................................................... 14, 15, 17

Iragorri v. United Techs. Corp.,
   274 F.3d 65 (2d Cir. 2001)................................................................................ 18

It's a 10, Inc. v. PH Beauty Labs, Inc.,
   718 F. Supp. 2d 332 (S.D.N.Y. 2010)................................................................ 18

John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors,
   22 F.3d 51 (2d Cir. 1994).................................................................................. 12

Karl W. Schmidt & Assocs. v. Action Envtl. Sols., LLC,
   No. 14-CV-00907-RBJ, 2014 WL 6617095 (D. Colo. Nov. 21, 2014).......................... 12

Lesser ex rel. Lesser v. Camp Wildwood,
   No. 01 CIV. 4209 (RWS), 2002 WL 1792039 (S.D.N.Y. Aug. 2, 2002)............ 14, 19, 21

Liberty Mut. Ins. Co. v. Fairbanks Co.,
   17 F. Supp. 3d 385 (S.D.N.Y. 2014)........................................................... 19, 21

Muller v. Walt Disney, Prods.,
   822 F. Supp. 1033 (S.D.N.Y. 1993)................................................................. 19

New York Marine & Gen. Ins. v. Lafarge N. Am.,
   599 F.3d 102 (2d Cir. 2010)...................................................................... passim

Albert Fisher Group, PLC v. Oliver ,
   No. 89 CIV. 7402 (SWK), 1990 WL 103968 (S.D.N.Y. July 18, 1990)........................ 16

Orb Factory, Ltd. v. Design Sci. Toys, Ltd.,
   6 F. Supp. 2d 203 (S.D.N.Y. 1998) ....................................................... 21, 23

Pall Corp. v. PTI Techs., Inc.,
   992 F. Supp. 196 (E.D.N.Y. 1998) ................................................................ 14

Universal Grading Serv. v. eBay, Inc.,
   No. 08-CV-3557 (CPS), 2009 WL 2029796 (E.D.N.Y. June 10, 2009) ........................ 22

## STATUTES

9 U.S.C. § 4 ............................................................................................................. 16

28 U.S.C. §1391 .............................................................................................. 13, 14

28 U.S.C. § 1404(a) ........................................................................................ passim

52 U.S.C. § 30101 ................................................................................................... 6

## RULES

Fed. R. Evid. 602 ............................................................................................. 20, 21

## I.    INTRODUCTION

Plaintiff Stephanie Clifford ("Plaintiff" or "Ms. Clifford") opposes Defendant Donald J. Trump's ("Mr. Trump") Motion to Transfer Venue, or in the Alternative, to Stay or Dismiss Pursuant to the "First-Filed Rule" ("Motion").  Mr. Trump bears a heavy burden to prevail on this Motion and must prove that transfer is warranted by "clear and convincing evidence."  New York Marine & Gen. Ins. v. Lafarge N. Am., 599 F.3d 102, 114 (2d Cir. 2010).  Mr. Trump fails to meet his burden for numerous reasons discussed in detail herein.

Mr. Trump's Motion is premised on creating the misleading impression that this action is inextricably intertwined with the two previously filed actions in California and that it should have been filed in California, but was not so filed because of forum shopping.  Mr. Trump is incorrect.  Even if Plaintiff had tried to file this action in California, venue likely would not have been proper and Mr. Trump does not establish otherwise.  Mr. Trump does not reside in California.  [Doc. No. 1 ¶2.]  In contrast to the other California based actions, there is no California resident defendant in this action and no conduct specifically directed at or occurring in California that forms the basis of this action.  Rather, this action arises out of a single defamatory tweet directed to Plaintiff regarding an encounter that took place in 2011 in Las Vegas.  [Id. ¶15.]  Thus, it is unclear how Mr. Trump believes Plaintiff could have filed this action in California to begin with.  This alone is fatal to the Motion because venue can only be transferred to a "district or division *where it might have been brought*."  28 U.S.C. § 1404(a) (emphasis added).

Nevertheless, even assuming that this action could have been brought in California, transfer is not warranted.  Indeed, it is noteworthy that while Mr. Trump makes much of the Settlement Agreement, Mr. Trump has never in fact taken the position that he is a party to the Settlement Agreement or affirmatively sought to invoke any rights under the Settlement

Agreement in any action now pending – including those in California.  Thus, although Mr. Trump raises the specter of competing motions to compel arbitration in two venues, Mr. Trump has not sought to compel arbitration in this or *any* action.  During the parties' meet and confer discussions regarding the petition filed in California, Mr. Trump's counsel *refused to tell Plaintiff's counsel whether Mr. Trump was a party to the Settlement Agreement*.  [Declaration of Michael J. Avenatti ("Avenatti Decl.") ¶13.]  As Mr. Trump admits, he has merely "joined" a motion filed by Essential Consultants, LLC.  [Doc. No. 11-1 at 9.]  By seeking a transfer, Mr. Trump wishes to evade the necessity of taking a position on this issue, to rely on the work of Essential Consultants, and remain on the sidelines.  This is not a valid basis to seek a transfer.

Moreover, as discussed herein, one of the actions discussed by Mr. Trump has been remanded to State Court and cannot support his argument.  Regardless, neither action arises out of the same facts, transactions, or occurrences as Mr. Trump contends.  Similarly, the convenience factors discussed under section 1404(a), such as the location of witnesses and other evidence, do not require transfer – let alone by clear and convincing evidence.  New York Marine, 599 F.3d at 114.  For these reasons and the reasons stated below, Mr. Trump's Motion should be denied.

## II.     BACKGROUND

Apart from this action, Plaintiff is involved in two other actions that are, or were, pending before the Central District of California:  Stephanie Clifford v. Donald J. Trump, Essential Consultants LLC, and Michael Cohen, Case No. 2:18-cv-02217-SJO-FFM (the "Declaratory Relief Action") and Stephanie Clifford v. Keith M. Davidson and Michael Cohen, Case No. 2:18-cv-05052-SJO-FFM (the "Attorney Action").  The Attorney Action has, however, been remanded to State Court.  [Avenatti Decl. Exh. 13.]  It is not a basis for transfer.

2

**A.      The Conduct at Issue in this Action Postdates the Declaratory Relief Action.**

Mr. Trump seeks to create the illusion that this action should have been part of the initial Declaratory Relief Action.  However, as explained in additional detail below, the facts giving rise to this action post-date the filing of the Declaratory Relief Action.  Mr. Trump's defamatory tweet was not posted until April 18, 2018—well after the filing of the Declaratory Relief Action. [See Doc. No. 1 ¶15; Avenatti Decl. Exh. 2.]  Accordingly, Plaintiff could not have filed this action as part of the Declaratory Relief Action.

**B.      The Merits of this Action and the California Actions Do Not Overlap.**

**1.      The Allegations of this Defamation Action are Limited to Whether Mr. Trump Defamed Plaintiff By Calling Her a Liar Regarding a Threatening Encounter that Took Place in 2011.**

The Complaint in this action was filed on April 30, 2018.  [See Doc. No. 1.]  It names a single Defendant, Donald J. Trump.  [Id.]  Mr. Trump is a resident of New York.  [Id. ¶2.] Plaintiff is a citizen of Texas.  [Id. ¶1.]  No party to this action resides in California.  Further, as discussed below, the allegations center on a threatening encounter that occurred in 2011 and whether Mr. Trump defamed Plaintiff by calling her a liar with respect to that incident.  The allegations in the Complaint disclose no relationship to the state of California.

As alleged, in May 2011, Ms. Clifford agreed to cooperate with *In Touch Magazine* in connection with an article about her relationship with Mr. Trump that the magazine was preparing at the urging of Ms. Clifford's ex-husband, who had approached the magazine without approval from Ms. Clifford.  [Doc. No. 1 ¶6.]  Plaintiff agreed to participate only after being told that the magazine was going to be running the story with or without her cooperation.  [Id.]

A few weeks after speaking with *In Touch* magazine, while Plaintiff was in Las Vegas, Nevada, Ms. Clifford was approached and threatened by a man regarding her intention to tell the

story of her relationship with Mr. Trump.  The threat occurred in the presence of Ms. Clifford's infant daughter, in a parking lot.  [Id. ¶7.]  The man approached Ms. Clifford and said to her, "Leave Trump alone. Forget the story."  [Id. ¶ 8.]  The man then leaned around and looked at Ms. Clifford's infant daughter and said, "That's a beautiful little girl. It'd be a shame if something happened to her mom."  [Id. ¶9.]

Ms. Clifford was shaken by the experience and understood the man's statement to be a direct threat.  [Id. ¶10.]  However, because Ms. Clifford was frightened she did not at the time go to the police and did not seek to go public with her story at that time.  [Id. ¶11.]  Ultimately, the story was not run by *In Touch* in 2011.  [Id. ¶12.]  Mr. Trump was elected President of the United States on November 8, 2016.  [Id. ¶13.]

Thereafter, on or about April 17, 2018 on behalf of Ms. Clifford, a sketch of the man who threatened her in 2011 was released publicly.  [Id. ¶14.]  The sketch was created in consultation with Ms. Lois Gibson, one of the foremost forensic artists in the world.  [Id.]  Ms. Gibson met with Ms. Clifford for an extended period of time while compiling the sketch and asked her numerous questions about the encounter and the assailant.  [Id.]

After the sketch was made public, on April 18, 2018, Mr. Trump, from his verified personal Twitter account (@realDonaldTrump) posted the following false statement regarding Ms. Clifford, the sketch, and her account of the incident in 2011:

> A sketch years later about a nonexistent man. A total con job, playing the Fake News Media for Fools (but they know it)!

[Id. ¶15.]  The statement posted by Mr. Trump was in response to another tweet posted by the account DeplorablyScottish (@ShennaFoxMusic) which showed side-by-side images of the sketch of Ms. Clifford's harasser and a picture of Ms. Clifford and her husband.  [Id. ¶16.]

As alleged in the Complaint, Mr. Trump's statement falsely attacks the veracity of Ms. Clifford's account.  [Id. ¶17.]  It also accuses Ms. Clifford of committing a crime under New York law, as well as the law of numerous other states, in that it effectively states that Ms. Clifford falsely accused an individual of committing a crime against her.  [Id.]  Mr. Trump's statement is malicious, false, and defamatory.  [Id. ¶¶17, 30-32.]  Plaintiff alleges that in making the statement, Mr. Trump used his national and international audience of millions of people to make a false factual statement.  [Id.]  Plaintiff alleges that in doing so, Mr. Trump knew that his false statement would be read around the world and widely reported and that Ms. Clifford would be subjected to threats of violence, economic harm, and reputational damage.  [Id. ¶17.]

The Complaint alleges a single cause of action for defamation against Mr. Trump alone. [Id. ¶¶21-38.]  There is no apparent nexus to the State of California in the Complaint.  [Id.]  Mr. Trump is a resident of New York and venue is proper because this is a judicial district where Mr. Trump resides.  [Id. ¶4.]

### 2.     The Allegations of the Declaratory Relief Action Center on the Enforceability of the Settlement Agreement.

The initial Complaint in the Declaratory Relief Action was filed on March 6, 2018. [Avenatti Decl. Exh.1.]  The Amended Complaint in the Declaratory Relief Action was filed on or about March 26, 2018.  [See Avenatti Decl. Exh. 2.]  The Amended Complaint names three defendants: Donald J. Trump a.k.a David Dennison, Essential Consultants, LLC, and Michael Cohen.  [Id.]  The Amended Complaint asserts two causes of action – one for declaratory relief/judgment and one for defamation against Michael Cohen.  [Id.]

The first cause of action for declaratory relief centers on the enforceability of a Settlement Agreement (referred to therein as the "Hush Agreement") purportedly entered into just prior to the November 2016 presidential election in October of 2016.  [Id. ¶¶ 16-21.]  The apparent

purpose of the Settlement Agreement was to keep Plaintiff silent regarding her affair with Mr. Trump.  [Id. ¶¶10, 14-17.]  The affair took place, at least in part, in California.  [Id. ¶10.] Moreover, as Mr. Trump acknowledges, an arbitration further seeking to silence Plaintiff was filed against her in Los Angeles, California seeking to enforce the terms of the Settlement Agreement.  [Id. ¶30.]  Thus, venue is proper in that action in California.  [Id. ¶9.]

The Declaratory Relief Action alleges that the Settlement Agreement is unenforceable for numerous reasons.  [Id. ¶¶36-55.]  For example, the Plaintiff seeks the following relief:

- A determination that no agreement was formed "because, among other things, Mr. Trump never signed the agreements" and did not "provide any other valid consideration" because he "never assented to the duties, obligations, and conditions the agreements purportedly imposed upon him, which included … to provide Plaintiff with releases, a covenant not to sue, and representations and warranties..."  [Id. ¶41]

- A determination that the Settlement Agreement is unconscionable.  [Id. ¶¶42-43.]  For example, the Settlement Agreement contains a "Liquidated Damages" provision purporting to require Plaintiff to pay $1 Million for "each breach" calculated on a "per item basis."  [Id. ¶42.]  However, $1 Million for "each breach" bears no reasonable relationship to the range of actual damages that the parties could have anticipated.  [Id.] Instead, the clause was intended to inflict a penalty and financially cripple Plaintiff.  [Id.] Although the Settlement Agreement imposes draconian consequences and penalties upon Plaintiff, there are no remedies available to Plaintiff for Defendants' breach.  [Id. ¶43.]

- A determination that the Settlement Agreement is void *ab initio* because it is illegal and violates public policy.  [Id. ¶¶44-55.]  The bases for this conclusion include:  (1) that the Settlement Agreement violates the Federal Election Campaign Act (FECA), 52 U.S.C. §§ 30101, *et seq.*; (2) that it violates public policy by suppressing speech on a matter of public concern; (3) that it is without a lawful object or purpose because it was entered for the purpose of covering-up adulterous conduct; and (4) that it was entered into by Essential Consultants at the behest of Mr. Cohen, a New York attorney, and violates Rule 1.4 of the NY Rules of Professional Conduct.  [Id.]

- A separate and independent determination that the purported arbitration clause contained within the Settlement Agreement does not exist, is void *ab initio*, unconscionable, illegal, and violates public policy for similar reasons.  [Id. ¶¶56-63.]

The second cause of action for defamation set forth in the Amended Complaint is asserted only against Michael Cohen, not Mr. Trump.  [Id. ¶¶64-71.]  The defamatory statement by Mr.

Cohen was made on February 13, 2018 and, as set forth therein, accuses Plaintiff of lying *regarding whether or not she had an affair with Mr. Trump.* [Id. ¶¶27, 65.] The claim for defamation asserted against Mr. Cohen does not address or in any manner implicate Plaintiff's statements regarding the threatening incident in 2011 or the release of the sketch of that person. In fact, as set forth above, Plaintiff did not release the sketch until April 17, 2018 – well after Mr. Cohen's defamatory statement in February. [Doc. No. 1 ¶14.] It is thus logically and factually impossible for Mr. Cohen's statement to have been addressing the facts at issue in this action.

Accordingly, the Declaratory Relief Action does not overlap with this action. It seeks a determination that the Settlement Agreement is unenforceable – relief that Plaintiff does not affirmatively request in the Complaint in this action.[1] Further, insofar as it asserts a claim for defamation, Mr. Cohen's defamatory statement made on February 13, 2018 could not have referred to Plaintiff's statements or the release of the sketch in April of 2018. Proof of the falsity of Mr. Cohen's defamatory statement will not turn on the same facts that will determine the falsity of Mr. Trump's statement in this action. Indeed, as noted, because Mr. Trump had not made his defamatory statement at the time of the filing of the Declaratory Relief Action, Plaintiff could not have included it.

### 3.     Mr. Trump Has Not Admitted to Being a Party to the Settlement Agreement or Sought Relief Under It.

In his Motion, Mr. Trump repeatedly invokes the Settlement Agreement and its supposed importance to this case. Mr. Trump's position is completely undercut by his own actions. He has steadfastly refused to unambiguously admit to having knowledge of the Settlement Agreement before it was entered into, or that he is in fact a party to the Settlement Agreement

---

[1] To the extent that Mr. Trump seeks to affirmatively put the Settlement Agreement at issue in order to manufacture a factual/legal overlap, Plaintiff of course reserves the right to make any necessary argument in response.

(i.e., DD).  Further, he has not in any action asserted standing under the Settlement Agreement.

*First*, Mr. Trump did not sign the Settlement Agreement.  He did not do so despite the clear language in the Settlement Agreement stating "Each of the Parties represents and warrants . . . that this Agreement, when signed by all Parties, is a valid and binding agreement, enforceable in accordance with its terms."  [Avenatti Decl. Exh. 3 at ¶13.6 (emphasis added).]  As Plaintiff has argued elsewhere, but need not address in detail here, Mr. Trump's failure to sign the Agreement renders it nonexistent.  [Avenatti Decl. Exh. 5 at 7:26-10:14.]

*Second*, Mr. Trump has never expressly acknowledged that he is a party to the Settlement Agreement.  For example, on April 5, 2018, Mr. Trump, making his first public comments regarding the Declaratory Relief Action, denied having knowledge of the $130,000 payment to Plaintiff.  [Avenatti Decl., Exh. 6.]  Mr. Trump stated he did not know where the money came from, denied setting up a fund from which Mr. Cohen could make the payment, and directed reporters' questions to Mr. Cohen.  [Id.]

Similarly, on or about February 13, 2018, Mr. Cohen issued a public statement regarding Ms. Clifford, the existence of the Settlement Agreement, and details concerning the Settlement Agreement stating in part:  "In a private transaction in 2016, I used my own personal funds to facilitate a payment of $130,000 to Ms. Stephanie Clifford.  Neither the Trump Organization nor the Trump campaign was a party to the transaction with Ms. Clifford, and neither reimbursed me for the payment, either directly or indirectly."  [Avenatti Decl. Exh. 7.]

In a March 19, 2018 *Vanity Fair* article, Mr. Cohen again suggested Mr. Trump had no knowledge of the Settlement Agreement.  [Avenatti Decl., Exh. 8.]  In it, he is quoted as saying: "What I did defensively for my personal client, and my friend, is what attorneys do for their

high-profile clients."  [Id.]  The article also states that Mr. Cohen "claims that Trump did not know that he had paid Clifford the $130,000."  [Id.]

In light of these facts, it is not surprising that Mr. Trump has not moved to compel arbitration in the Declaratory Relief Action.  Instead, he "joined" the motion filed by Essential Consultants and "consented" to arbitration.  [Avenatti Decl. Exh. 9.]  Mr. Trump acknowledges as much.  [Doc. No. 11-1 at 9 ("Mr. Trump filed a joinder in the Arbitration Motion.").]  In fact, during the parties' meet and confer discussions regarding the petition to compel arbitration, Mr. Trump's counsel *refused to tell Plaintiff's counsel whether Mr. Trump was a party to the Settlement Agreement*.  [Avenatti Decl. ¶13.]  In this Motion, Mr. Trump states only "*[a]ccording to Plaintiff*, …David Dennison ('DD') is a pseudonym for Mr. Trump."  [Doc. No. 11-1 at 6 (emphasis added).]  Mr. Trump does not admit to being DD.  It is thus unclear whether he will assert rights under the Agreement or if he has standing to do so.

Accordingly, Mr. Trump cannot decide whether or not he should rely on the Settlement Agreement.  Mr. Trump wishes to "piggyback" off of Essential Consultants' motion in the Declaratory Relief Action without having to take a position on his standing.  Mr. Trump seeks to use the Settlement Agreement to his advantage when it is convenient and to deny involvement when it is not.  The Settlement Agreement – at least in this action – is a red herring.

### 4.   The Attorney Action Was Remanded to State Court and Is Not a Basis for Transfer.

Lastly, Plaintiff filed the Attorney Action against her former attorney Keith Davidson and Michael Cohen on June 6, 2018 in the Superior Court for the State of California, County of Los Angeles, Central District.  [Avenatti Decl. Exh. 11.]  The action was removed to federal court, and Plaintiff sought remand.  [Avenatti Decl. Exh. 12.]  The court in that action has granted that

motion to remand and the action is no longer pending in the Central District. [Avenatti Decl. Exh. 13.] As such, it is not a basis to transfer this action to the Central District.[2]

## III.   ARGUMENT

Transfer under section 1404(a) can only be made for "the convenience of parties and witnesses, in the interest of justice," to "any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a); see also Hershman v. UnumProvident, 658 F. Supp. 2d 598, 600 (S.D.N.Y. 2009) (setting forth the standard.). As the moving party, Mr. Trump must establish that transfer is warranted by "clear and convincing evidence." New York Marine, 599 F.3d at 114. Mr. Trump fails to meet this heavy burden.

### A.   Mr. Trump Does Not Establish That This Action Could Have Been Brought in California.

Mr. Trump's Motion should be denied because he has not established that this action could have been brought in California. "An action 'might have been brought' in another forum if venue would have been proper there and the defendants would have been amenable to personal jurisdiction in the transferee forum when the action was initiated." Balance Point Divorce Funding, LLC v. Scrantom, 978 F. Supp. 2d 341, 355 (S.D.N.Y. 2013). If this requirement is not met, the Court "need not reach the venue analysis and balance of convenience factors in order to conclude that the motion to transfer venue is improper." Erickson Beamon Ltd. v. CMG

---

[2] It is worth noting, however, that the Attorney Action is not in fact related to this action. Plaintiff retained Mr. Davidson, a California attorney and citizen, as her personal attorney. [Avenatti Decl. Exh. 11 ¶¶2, 8.] The gravamen of the Complaint in the Attorney Action is that Mr. Cohen and Mr. Davidson exchanged a series of text messages, the purpose of which was to attempt to arrange for Plaintiff to appear on Mr. Sean Hannity's television program on *Fox News* to falsely deny the existence of an affair with Mr. Trump. [Id. ¶¶19-35.] Through this exchange, as well as Mr. Davidson subsequently acting to tip Mr. Cohen off regarding Plaintiff's anticipated legal strategy, Plaintiff alleges that Mr. Davidson breached his fiduciary duties to Plaintiff. [Id. ¶¶61-73.] Plaintiff further asserts a cause of action for aiding and abetting breach of fiduciary duty against Mr. Cohen. [Id. ¶¶74-82.]

<u>Worldwide, Inc.</u>, No. 12 CIV. 5105 NRB, 2013 WL 5355010, at *9 (S.D.N.Y. Sept. 25, 2013).

### 1.      There Is No Forum Selection Clause in the Settlement Agreement.

Mr. Trump does not appear to address the issue of whether this action could have been brought in California.  At best, he seems to imply that it could have by virtue of a supposed forum selection clause in the Settlement Agreement.  However, there is no such forum selection clause.  The Settlement Agreement does not provide grounds for transferring this action.

Citing the Supreme Court's decision in <u>Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas</u>, 571 U.S. 49 (2013), Mr. Trump contends that a forum selection clause in the Settlement Agreement dictates that this action be transferred.  [Doc. No. 11-1 at 14-15.]  Although a forum selection clause can impact venue, the Supreme Court's decision in <u>Atlantic Marine</u> "presupposes a contractually valid forum-selection clause."  <u>Id.</u> at 62 n.5.  Here, none exists.

Mr. Trump contends that paragraph 8.2 of the Settlement Agreement is a forum selection clause.  It is not.  Paragraph 8.2 provides as follows:

> 8.2    <u>DD's Election of either California, Nevada or Arizona Law & Venue</u>.  This Agreement and any disputed or controversy relating to this Agreement, shall in all respects be *construed, interpreted, enforced and governed* by the laws of the State of California, Arizona or Nevada at DD's election.

[Avenatti Decl. Exh. 3 at ¶8.2 (emphasis added).]

Mr. Trump does not establish that he is DD or has standing to invoke paragraph 8.2.  Regardless, paragraph 8.2 does not mandate that a dispute "relating to this Agreement" be filed or brought in California.  It says nothing substantive about the required *forum* or *venue*.  Rather, it is a *choice of law* clause mandating, at best, that California, Arizona, or Nevada law governs at DD's election – assuming of course that DD is Mr. Trump.  [Doc. No. 11-1 at 6.]

Although the subject heading of paragraph 8.2 references "venue," the substance of the paragraph does not.  Lest there be any confusion as to the significance of the heading, paragraph 8.5 provides:

> The captions appearing at the commencement of certain paragraphs herein are *descriptive only and for convenience of reference*.  Should there be any conflict between any such caption or heading and the paragraph at the caption of which it appears, *the paragraph, and not such caption, shall control and govern*.

[Avenatti Decl. Exh. 3 at ¶8.5 (emphasis added).]

In other words, the heading has no significance.  Paragraph 8.2 says nothing about the proper venue and discusses only choice of law.  Put simply, there is no forum selection clause.  The Settlement Agreement does not establish that venue would have been proper in California.[3]

## 2.     Mr. Trump Does Not Establish That Venue Would Have Been Proper in California.

In the absence of a forum selection clause, it must be determined whether venue would have been proper in California.  Mr. Trump *offers no argument* establishing that venue would have been proper and fails to carry his burden.  This is presumably because there is no reason to believe that it would have been.  This is fatal to Mr. Trump's Motion.

In general, venue is proper:  (1) in a judicial district where any defendant resides, if all are residents of the State in which the district is located; (2) a district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) as a fallback, any judicial district

---

[3] Alternately, even if paragraph 8.2 were a forum selection clause, it is permissive, not mandatory.  Nothing in the clause *requires* DD to elect any particular forum.  [Avenatti Decl. Exh. 3 at ¶8.2.]  The clause only governs "at DD's election" and the plain language permits DD to make no election at all.  [Id.]  The use of the word "shall" does not make it mandatory because, at best, it establishes that *if* DD makes such an election, the agreement shall be governed by the law elected.  See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors, 22 F.3d 51, 53 (2d Cir. 1994) (Forum selection clause was permissive despite the use of "shall" as it only established that the forum "shall" have jurisdiction not that the action must be filed there).  Courts generally do not apply Atlantic Marine to permissive forum selection clauses.  See, e.g., Fed. Deposit Ins. v. Paragon Mortg. Servs., No. 1:15 CV 2485, 2016 WL 2646740, at *3 (N.D. Ohio May 10, 2016); Karl W. Schmidt & Assocs. v. Action Envtl. Sols., LLC, No. 14-CV-00907-RBJ, 2014 WL 6617095, at *5 (D. Colo. Nov. 21, 2014).  Accordingly, even if there were a forum selection clause, Atlantic Marine would not govern.

in which any defendant is subject to personal jurisdiction.  28 U.S.C. §1391(b).  Mr. Trump does not establish that venue would have been proper in California on any of these grounds.

*First*, Plaintiff understands that Mr. Trump resides in New York.  [Doc. No. 1 ¶2.]   Mr. Trump seems to contend that he resides in Washington, DC.  [Doc. No. 11-1 at 18.]  Although it is "a long-settled principle of law" that a party can have more than one residence, <u>Hicks v. Brophy</u>, 839 F. Supp. 948, 950 (D. Conn. 1993), Mr. Trump is not contending that he resides in California.  Thus, for purposes of whether venue exists in California, Mr. Trump has not established that it would have been based on Mr. Trump's residence.  28 U.S.C. § 1391(b)(1).

*Second*, this action arises out of a defamatory tweet and Plaintiff does not have a basis to believe that tweet was posted while Mr. Trump was in California.  Thus, Mr. Trump has not established that "a substantial part of the events or omissions giving rise to the claim occurred" in California.  28 U.S.C. §1391(b)(2).

*Third*, Plaintiff is not aware of facts that would support personal jurisdiction over Mr. Trump in California *in connection with the specific claims at issue in this action*.  In contrast to the other California actions, it does not appear that Mr. Trump directed his conduct to California in connection with the defamatory tweet.  <u>See</u> <u>Calder v. Jones</u>, 465 U.S. 783, 788 (1984) (the Constitution "permits personal jurisdiction over a defendant in any State with which the defendant has 'certain minimum contacts . . .'").  Accordingly, Mr. Trump has not established that personal jurisdiction would have been proper over him in connection with the specific allegations in this action.  28 U.S.C. §1391(b)(3).

In sum, Mr. Trump fails to demonstrate that venue would have been proper in California. <u>See</u> <u>Balance Point</u>, 978 F. Supp. 2d at 355.  Although Mr. Trump may now arbitrarily consent to venue in California in an effort to find a preferable forum, this does not change the analysis as to

whether this action could have been brought in California.  28 U.S.C. § 1404(a); 28 U.S.C. § 1391(b).  Accordingly, the Court "need not reach the venue analysis and balance of convenience factors in order to conclude that the motion to transfer venue is improper."  Erickson Beamon, 2013 WL 5355010, at *9.  The Motion should be denied.

      **B.**      **The Convenience Factors Do Not Favor Transfer.**

Assuming counterfactually that venue would have been proper, neither the interests of justice nor the convenience factors of section 1404(a) favor transfer to California.

      **1.**      **The Interests of Justice Do Not Favor Transfer.**

Mr. Trump contends that the interests of justice favor transfer because of the pending litigation in California.  As explained above, and below, the litigation in California is not sufficiently related to this action to favor transfer.

The interests of justice look, among other things, to "trial efficiency."  Lesser ex rel. Lesser v. Camp Wildwood, No. 01 CIV. 4209 (RWS), 2002 WL 1792039, at *3 (S.D.N.Y. Aug. 2, 2002).  In this regard, "[i]t is true that the existence of a related action pending in the transferee court typically weighs strongly in favor of transfer."  Children's Network, LLC v. PixFusion LLC, 722 F. Supp. 2d 404, 415 (S.D.N.Y. 2010).  However, this rule "usually applies when identical or substantially similar parties and claims are present in both courts."  In re Cuyahoga Equip. Corp., 980 F.2d 110, 116–17 (2d Cir. 1992).  Courts often look to whether "the '*same facts, transactions, or occurrences*' are at issue" in both actions.  Pall Corp. v. PTI Techs., Inc., 992 F. Supp. 196, 202 (E.D.N.Y. 1998) (emphasis in original).  Application of the rule is "subject to the discretion of the trial court."  In re Cuyahoga Equip. Corp., 980 F.2d at 117.

Here, the "same facts, transactions, or occurrences" are not at issue between the two pending California actions and this action.  Pall, 992 F. Supp. at 202.  As set forth in detail above

14

(subsection B.2), the facts pertaining to the merits of this action do not overlap with the merits of either the Declaratory Relief Action or the Attorney Action. Mr. Trump contends and relies on authority that the actions need not be identical for the rule favoring transfer to apply. [Doc. No. 11-1 at 13-14.] Plaintiff does not contend the actions must be *identical*. However, the Second Circuit does require that the action be "identical *or substantially similar*." In re Cuyahoga Equip., 980 F.2d at 116–17 (emphasis added). Here, they are not substantially similar. Nevertheless, Mr. Trump appears to contend that this action is sufficiently related to the Declaratory Relief Action because of the defamation claim against Mr. Cohen and the issue of whether the Declaratory Relief Action must be arbitrated. [See Doc. No. 11-1 at 12-13.][4]

*First*, insofar as there is also a defamation claim against Mr. Cohen in the Declaratory Relief Action, as explained above, this does not constitute sufficient relatedness. Mr. Cohen's defamatory statement predates Plaintiff's account of the threatening encounter and the sketch. [See Doc. No. 1 ¶15 (Plaintiff's statements made in April 2018); Avenatti Decl. Exh. 2 ¶65 (Mr. Cohen's statement was made in February 2018.).] Mr. Cohen could not have been calling Plaintiff a liar as to the statements here at issue and thus the truth or falsity of Mr. Cohen's statement is irrelevant. Indeed, Mr. Trump seems to contend that whether Plaintiff had an affair with Mr. Trump is put at issue in this action such that the defamation claim involving Mr. Cohen in the Declaratory Relief Action overlaps with this action. That is not the case. Here, the operative facts center entirely on whether the threatening encounter took place and the release of the sketch of the person responsible, not the affair. [See Doc. No. 1.][5]

---

[4] Mr. Trump does not meaningfully contend that this action is sufficiently related to the Attorney Action to require transfer. [See Doc. No. 11-1 at 12-13.] Regardless, as stated above, the Attorney Action has been remanded and is no longer before the Central District. [Avenatti Decl. Exh. 13.]

[5] Notably, as well, Mr. Cohen has filed a motion to strike the defamation claim against him. [Avenatti Decl. Exh. 10.] While Plaintiff has opposed this motion, should the court in that action grant the motion, there will be no

The connection between the two defamation claims is not sufficient to meet Mr. Trump's burden. For example, <u>Albert Fisher Group, PLC v. Oliver</u> was a libel action involving the defendants' statement that the plaintiffs "'in almost every case' breach their agreements and fail to pay their debts." No. 89 CIV. 7402 (SWK), 1990 WL 103968, at *1 (S.D.N.Y. July 18, 1990). The supposedly related case involved an alleged breach of contract between the same plaintiff and defendant. <u>Id.</u> As the Court noted, the allegations in the other action "if true, would provide one instance of the type of breach that the defendants purportedly spoke of…" <u>Id.</u> Nevertheless, the Court concluded that this claimed similarity was insufficient to justify transfer and denied the motion seeking transfer. <u>Id.</u> The same result should be ordered here.

*Second*, Mr. Trump contends this "Court could be required to rule upon the arbitration provision" at issue in the Declaratory Relief Action. [Doc. No. 11-1 at 12.] In light of Mr. Trump's refusal to take a position on whether he is a party to the Settlement Agreement, Mr. Trump's use of the words "could be" in connection with this statement is telling. Mr. Trump has not sought to compel arbitration in this action. Mr. Trump could have done so and requested that it be stayed pending resolution of the motion filed by Essential Consultants in the Declaratory Relief Action. He has not. Mr. Trump also could have filed his own action in California seeking to compel arbitration of this action and request that this Court stay the action pending resolution of that petition. <u>See</u> 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration *may petition any United States district court* … for an order directing that such arbitration proceed in the manner provided for in such agreement."). Mr. Trump has not taken this action, either.

---

defamation claim pending against Mr. Cohen and thus no conceivable overlap with this action on that ground.

The fact that Mr. Trump has not taken these actions is, again, not surprising in light of his consistent refusal to take a position as to whether he is a party to the Settlement Agreement or to affirmatively seek to enforce any rights under it. Indeed, as noted above, during the parties' discussions in the Declaratory Relief Action, Mr. Trump's counsel *refused to tell Plaintiff's counsel whether Mr. Trump was a party to the Settlement Agreement*. [Avenatti Decl. ¶13.] Rather, it is apparent that it is Mr. Trump, not Plaintiff, who is seeking to take advantage of what he believes to be a more favorable venue. Mr. Trump would like to continue to "consent" to Essential Consultants' request for arbitration without asserting his own rights under the Settlement Agreement. The Court should not be taken in by this gamesmanship.

Nevertheless, if the Court were concerned about the *possibility* of having to rule on the enforceability of the arbitration clause in the Settlement Agreement, the mere fact of the risk of inconsistent rulings on some issues is not alone sufficient to support transfer.[6] For example, in Children's Network the Court found the two actions insufficiently related even though the same patents were involved. Children's Network, 722 F. Supp. 2d at 415. The Court held that different products were involved and the mere issue of overlapping facts regarding the patent being at issue, was not sufficient for transfer. Id. This was so even though there was the "possibility of inconsistent claim constructions." Id. at 416. Similarly, in American Steamship, the Court concluded that while a "risk of inconsistent interpretations of the [operative] policy does remain," which was "undesirable," the remaining factors dictated that transfer be denied. Am. Steamship Owners v. Lafarge N. Am., 474 F. Supp. 2d 474, 488 (S.D.N.Y. 2007).

Here, the same conclusion should be reached. This action and the Declaratory Relief Action are not "identical or substantially similar" – even as to the defamation claims. In re

---

[6] Again, should this issue actually be raised, Plaintiff reserves the right to raise any necessary argument.

Cuyahoga Equip., 980 F.2d at 116–17.  The abstract possibility of this Court having to consider whether arbitration is required is not sufficient for Mr. Trump to meet his burden to establish grounds for transfer.  This is particularly so where, as discussed below, the remaining convenience factors do not favor transfer.

### 2.      Plaintiff's Choice of Forum is Entitled to Deference.

A plaintiff's choice of forum is "entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer."  Hershman, 658 F. Supp. 2d at 601.  Mr. Trump is not correct when he asserts that Plaintiff's choice of forum is not entitled to deference because she does not reside in this forum.  Rather, as the Second Circuit has stated, when the plaintiff's chosen forum is not the plaintiff's home forum, "[t]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." Iragorri v. United Techs. Corp., 274 F.3d 65, 71–72 (2d Cir. 2001).  One such valid reason is "the defendant's amenability to suit in the forum district."  Id. at 72.  As discussed above, venue would not have been proper in California.  Plaintiff brought suit in New York based on Plaintiff's understanding that Mr. Trump is a New York resident.  [Doc. No. 1 ¶2.]  Mr. Trump has not contested personal jurisdiction.  Accordingly, Plaintiff's choice of forum is entitled to deference. Eagle Auto Mall Corp. v. Chrysler Grp., LLC, 760 F. Supp. 2d 421, 426 (S.D.N.Y. 2011); It's a 10, Inc. v. PH Beauty Labs, Inc., 718 F. Supp. 2d 332, 336 (S.D.N.Y. 2010).  This factor weighs strongly against transfer.

### 3.      The Convenience of Witnesses Does Not Favor Transfer.

Mr. Trump does not meet his burden to establish that the convenience of witnesses requires transfer.  Rather, Mr. Trump engages in gamesmanship by refusing to even acknowledge

that he maintains a residence in New York.  Further, the witnesses he claims have relevant testimony are apparently offered regarding the details of the Settlement Agreement which, as discussed above, is not relevant to this action.

"The convenience of the forum for witnesses 'is probably considered the single most important factor in the analysis of whether a transfer should be granted.'"  Hershman, 658 F. Supp. 2d at 602.  "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district."  Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014); see also Am. Steamship, 474 F. Supp. 2d at 483-84 (concluding that the defendant failed to demonstrate that its "laundry list of witnesses" residing in the proposed transferee district were "likely to be needed" and were instead "irrelevant for purposes of the present motion" to transfer); Muller v. Walt Disney Prods., 822 F. Supp. 1033, 1035 (S.D.N.Y. 1993) (examining whether the witnesses in the proposed transferee forum "would offer any evidence relevant to the claims in this action.").  Additionally, "[w]here deposition testimony is an available alternative to live testimony, the convenience of the non-party witness does not favor a transfer."  Lesser, 2002 WL 1792039, at *4.

Mr. Trump's attempt to manufacture a list of witnesses in California is substantial evidence that it is Mr. Trump who is engaging in gamesmanship regarding venue, not Plaintiff. For example, Mr. Trump refuses to acknowledge that he resides in the forum state of New York. [Doc. No. 11-1 at 18.]  It is common knowledge that Mr. Trump maintains a residence in New York City in Trump Tower, located in Manhattan.  [See Avenatti Decl. Exh. 15.]  Indeed, as noted above, "while a person may have more than one residence, he may only have one domicile at any one time."  Hicks, 839 F. Supp. at 950.  Domicile is determined by "both (1) the party's

19

physical presence in the state; and (2) the intent to remain in that state indefinitely." Id. "For purposes of diversity jurisdiction, a person's citizenship is determined by domicile." Id. Mr. Trump has not contested personal jurisdiction in this District. Indeed, Plaintiff believes that New York is Mr. Trump's domicile. [Doc. No. 1 ¶2.] Regardless, it is beyond any serious dispute that Mr. Trump has a residence in New York City. Yet, Mr. Trump refuses to make this concession. It must be conceded that Mr. Trump is a witness in New York.

Mr. Trump also lists Plaintiff's counsel, Michael Avenatti, as a California witness likely to testify regarding the "preparation of the sketch of the alleged perpetrator of the Alleged 2011 incident." [Doc. No. 11-1 at 16.] Plainly, Mr. Avenatti will not testify regarding attorney-client privileged matters. Indeed, as is readily apparent, Mr. Avenatti is not a competent witness to testify regarding the accuracy of the sketch. Fed. R. Evid. 602. Mr. Avenatti should not be considered in connection with the convenience of witnesses. However, insofar as the Court does consider Mr. Avenatti, Mr. Avenatti has brought this action in New York on behalf of Plaintiff, has otherwise made the determination that New York is a proper venue, and would be willing to travel there to testify in the unlikely event he is deemed to be a relevant witness.

Mr. Trump concedes that Mr. Cohen is located in New York. [Id. at 18.] Mr. Trump also contends that Mr. Cohen is "the person with the most direct knowledge of the facts and circumstances surrounding [the Settlement Agreement's] formation." [Doc. No. 11-1 at 12-13 n.8.] As discussed below, the formation of the Settlement Agreement is not likely relevant to this action, but as Mr. Trump's "fixer," Mr. Cohen may have knowledge regarding the 2011 threatening incident. [Avenatti Decl. Exh. 8.]

The remaining three witnesses discussed by Mr. Trump, namely, Keith Davidson, Gina Rodriguez, and Anthony Kotzev are apparently offered for the purpose of testifying regarding the

Settlement Agreement and the facts regarding the "formation, execution, and performance of the Settlement Agreement." [Doc. No. 11-1 at 17-18; Doc. No. 11-2 at ¶¶15(b)-(d).] As discussed above, these facts are not relevant to a determination of whether Mr. Trump defamed Plaintiff in connection with the 2011 threatening incident and her release of the sketch. See Am. Steamship, 474 F. Supp. 2d at 483-84 (concluding that the defendant failed to demonstrate that its "laundry list of witnesses" residing in the proposed transferee district were "likely to be needed."). Indeed, even assuming the Settlement Agreement was relevant, it is far from clear as to why testimony from third parties to that agreement regarding its formation would be necessary. Further, Mr. Trump has offered no reason why deposition testimony would not be "an available alternative to live testimony." Lesser, 2002 WL 1792039, at *4.

Although Mr. Trump asserts that these witnesses "may" have knowledge of the 2011 threatening incident or the sketch, there is no apparent basis for this assertion. Mr. Trump's counsel, Charles Harder, simply asserts in his Declaration that he is "informed and believe[s]" that these witnesses have this knowledge. [Doc. No. 11-2 ¶¶15(b)-(d).] Mr. Harder does not provide a basis for his personal knowledge. Fed. R. Evid. 602. "Vague generalizations" regarding witnesses testimony are "an insufficient basis upon which to grant a change of venue under § 1404(a)." Orb Factory, Ltd. v. Design Sci. Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998). Accordingly, this conclusory contention should be disregarded. Fed. R. Evid. 602.

Put simply, the Court "courts must consider the materiality, nature, and quality of each witness..." Liberty Mut. Ins., 17 F. Supp. 3d at 396. At this stage in the proceedings, the only witnesses whose testimony is plainly material to this action are Plaintiff, Mr. Trump, and possibly Mr. Cohen. Two of these witnesses reside in New York. The convenience of witnesses does not weigh in favor of transfer.

21

### 4.      The Location of Documents Does Not Favor Transfer.

"The location of documents and records 'is not a compelling consideration when records are easily portable.'"   Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006).  In such cases, the factor is neutral.  Id.  As a neutral factor, it does not favor transfer and is not clear and convincing evidence that transfer is proper.

### 5.      The Locus of Operative Facts Does Not Favor Transfer.

"The locus of operative facts is a 'primary factor' in determining whether to transfer venue."   Am. Steamship Owners, 474 F. Supp. 2d at 485.  Thus, "[a]long with the location of material witnesses, this has a bearing on where the 'center of gravity' of the action rests."  Id. However, where the operative facts are "too spread out to clearly favor either venue" the factor is neutral at best.  Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 186 (E.D.N.Y. 2003). Mr. Trump is incorrect that California is the locus of operative facts.  As argued in detail herein, no fact of particular consequence to the outcome of this action occurred in California.  Even if some events pertaining to Plaintiff's affair with Mr. Trump occurred in California, this does not establish that the "center of gravity" is in California.  On the contrary, the threatening encounter at issue took place in Las Vegas, Nevada.  [Doc. No. 1 ¶7.]  Furthermore, Mr. Trump's location in connection with the defamatory tweet is relevant.  Mr. Trump has not contended that he was in California at the time of his tweet.  Indeed, aside from the occurrence of the threatening incident in Las Vegas, the locus of operative facts does not have a "definite location" as Mr. Trump's conduct was "taken over the internet."  Universal Grading Serv. v. eBay, Inc., No. 08-CV-3557 (CPS), 2009 WL 2029796, at *21 (E.D.N.Y. June 10, 2009).  Consequently, this factor does not favor transfer to California.  Rather, the facts are "too spread out to clearly favor either venue"

and the factor is, at best for Mr. Trump, neutral.  <u>Excelsior Designs</u>, 291 F. Supp. 2d at 186.  It is not therefore clear and convincing evidence that transfer is warranted.

### 6.   The Availability of Process to Compel the Attendance of Witnesses Does Not Favor Transfer.

"While it is true that in many situations the 'unavailability of compulsory attendance of ... key witnesses is a compelling reason to transfer the case,'" this is not true when there is no showing that witness "presence would be necessary for trial" or where "deposition testimony is an available alternative to live testimony."  <u>Orb Factory</u>, 6 F. Supp. 2d at 209.  Here, as discussed above, the witnesses Mr. Trump identifies in California are not offered for any relevant purpose and there has been no showing that they in fact have personal knowledge over the facts that are actually at issue.  The witnesses do not appear necessary for resolution of this action.  Consequently, there is no reason to believe that deposition testimony would be insufficient.  <u>Id.</u>  Moreover, the one witness Mr. Trump identifies as having "the most direct knowledge of the facts and circumstances" surrounding the Settlement Agreement [Doc. No. 11-1 at 12-13 n. 8], namely Mr. Cohen, challenged personal jurisdiction over him in California in the Attorney Action.  [Avenatti Decl. Exh. 12.]  It is not therefore clear that he could be compelled to testify in California.  Accordingly, this factor does not weigh in favor of transfer.

### 7.   The Relative Means of the Parties Does Not Favor Transfer.

Mr. Trump improperly seeks to impose the burden on Plaintiff to establish that litigating this action in California would not impose an undue hardship on her.  [Doc. No. 11-1 at 21.]  Mr. Trump bears the burden to prove that this factor favors transfer by clear and convincing evidence.  <u>New York Marine</u>, 599 F.3d at 114.  Although Plaintiff does not contend that litigating in California would cause her an undue hardship, this does not mean that the factor favors transfer.  On the contrary, "where proof of such disparity … does not exist, *this is not a significant factor*

*to be considered" at all*.  Am. Eagle Outfitters v. Tala Bros., 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (emphasis added).  The factor is neutral and is not evidence that transfer is required.

### 8.    Balancing the Factors Does Not Favor Transfer.

In sum, none of the convenience factors clearly favor transfer.  At best, some are neutral.  Mr. Trump bears the burden to establish the propriety of transfer by clear and convincing evidence.  New York Marine, 599 F.3d at 114.  He has not met this burden.  Therefore, his Motion should be denied.

### C.    In the Alternative, the First-Filed Doctrine Does Not Require a Stay or Dismissal.

As the Second Circuit has stated, the "first-filed rule does not constitute an invariable mandate."  Employers Ins. of Wausau v. Fox Entm't Grp., 522 F.3d 271, 275 (2d Cir. 2008).  The doctrine "is not meant to be applied in a 'rigid' or 'mechanical' way, 'and is quite commonly overcome where circumstances warrant.'"  AEI Life, LLC v. Lincoln Ben. Life, 305 F.R.D. 37, 44 (E.D.N.Y. 2015).  The first-filed rule "is only applicable where 'in fact the suits are duplicative.'"  Am. Steamship, 474 F. Supp. 2d at 481.  This "principle requires a 'substantial overlap' between the cases, in that they have 'identical or substantially similar parties and claims.'"  Id.  "The rule applies" most readily "where 'essentially the same lawsuit involving the same parties and the same issues' is filed in two different forums."  Bukhari v. Deloitte & Touche LLP, No. 12 CIV. 4290 PAE, 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012).  The "classic context for applying the rule is where mirror-image lawsuits between the same parties are filed in different venues...."  Id.

*First*, for the same reasons discussed above, the California actions are not related and there is no "substantial overlap" between either the Declaratory Relief Action or the Attorney

Action." <u>Am. Steamship</u>, 474 F. Supp. 2d at 481.  Therefore, Mr. Trump fails to establish the threshold requirement of duplicative suits.  <u>Id.</u>

*Second*, assuming counterfactually that the actions are related, the "doctrine is not applied when the 'balance of convenience'—determined using the same factors considered in connection with motions to transfer venue—'favors the second-filed action.'  <u>AEI Life v. Lincoln Ben. Life</u>, 305 F.R.D. 37, 45 (E.D.N.Y. 2015).  The doctrine "does not supersede the inquiry into the balance of convenience under § 1404(a)."  <u>Am. Steamship</u>, 474 F. Supp. 2d at 481.  Thus, for the same reasons discussed above, the convenience factors do not favor stay or dismissal.

Accordingly, Mr. Trump's request for a stay or dismissal under the first-filed doctrine should be denied.

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff requests that Mr. Trump's Motion be denied.

Dated:  August 6, 2018                    Respectfully Submitted,

/s/ Catherine R. Keenan
Catherine R. Keenan, Esq.
Federal Bar No. CK 5925
66 Field Point Road
Greenwich, CT 06830
Tel: (203) 661-4200
Fax: (203) 661-3666
E-Mail: efile@greenwichlegal.com


Michael J. Avenatti (*Pro Hac Vice* application forthcoming
AVENATTI & ASSOCIATES, APC
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Tel: (949) 706-7000
Fax: (949) 706-7050